| | |
|---|---|
| Richard Allen Dalton, | Civ. No. 11-2757 (SRN/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Deputy Lisa Hansford, | |
| Defendant. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Defendant Deputy Lisa Hansford's Motion for Summary Judgment (ECF No. 37). Defendant moved for summary judgment on July 16, 2012. On August 22, 2012, the Court issued an Order requiring Plaintiff Richard Allen Dalton to respond to Defendant's motion no later than September 10, 2012. (Order, Aug. 22, 2012, ECF No. 44.) Plaintiff did not submit an opposition to the instant motion. The only facts in the record stem from the affidavits submitted by Defendant in support of her motion. Specifically, Defendant submitted affidavits of Dr. David Paulson, M.D., M.B.A., Defendant Lisa Hansford, Kim Ebeling, and Shelli Monio.[1] (ECF Nos. 39, 40, 41, 42.) Accordingly, the entire factual background is supplied by Defendant's affidavits. Based on the foregoing, the Court recommends Defendant's motion be granted and judgment be entered in her favor.

---

[1] While motions for summary judgment are typically supported by materials uncovered during discovery, reliance on affidavits is acceptable under Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure. *Accord Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962).

# I.    Background

On April 21, 2011, Plaintiff Richard Allen Dalton was incarcerated at Minnesota Correctional Facility – Oak Park Heights. (Affidavit of Lisa Hansford ¶¶ 1-4.) Defendant was assigned to monitor the Administrative Control Unit ("ACU") during first shift, which extended from 10:25 p.m. to 6:55 a.m. (Hansford Aff. ¶ 2.) At approximately 1:00 a.m. on April 22, 2011, Plaintiff began to complain of stomach pains and vomiting. (Hansford Aff. ¶ 3.) Plaintiff pressed his intercom button and requested to see a nurse based on his vomiting and stomach pains. (Hansford Aff. ¶ 3.) Defendant notified Nurse Maikao Xiong of Plaintiff's request twice and, after reviewing Plaintiff's chart, advised Plaintiff that Nurse Xiong would not visit Plaintiff's cell unless his condition worsened. (Hansford Aff. ¶ 3, 5, Ex. 1.)

Defendant observed Plaintiff hovering over his toilet on the camera in his ACU cell. (Hansford Aff. ¶ 5.) During a security round, Defendant saw Plaintiff lying on the ground near his toilet, but based on information from Correctional Officer Zack Jacobs that Plaintiff would lie on the ground between rounds of vomiting, Defendant declined to disturb Plaintiff. (*Id.*) Defendant and Officer Jacobs continued to monitor Plaintiff by video camera. (*Id.*)

Later in the morning on April 22, before Defendant's shift ended, Plaintiff again rang his intercom and complained about stomach pains and vomiting. (Hansford Aff. ¶ 6.) Defendant reiterated that Nurse Xiong would not come to his cell unless his condition worsened. (*Id.*) Defendant advised Plaintiff to complete a request for medical attention so he could be seen by a doctor in the morning. (*Id.*) At no point did Plaintiff indicate he was experiencing chest pains. (Hansford Aff. ¶ 7.)

Defendant documented her interactions with Plaintiff in a logbook. (Hansford Aff., Ex. 1.) Defendant does not have supervisory authority over Nurse Xiong with regard to medical decisions. (Hansford Aff. ¶ 9; Affidavit of David Paulson, M.D., M.B.A. ¶ 9.)

On April 22, 2011, Dr. Stephen Craane, M.D., examined Plaintiff. (Paulson Aff. ¶ 5.)[2] During his examination with Dr. Craane, Plaintiff indicated he woke at approximately 1:00 a.m. due to sharp abdominal pain and chest pain. (*Id.*) Plaintiff also reported "headaches, dyspnea, lightheadedness, nausea, and paresthesias (both hot an[d] cold) in his hands and feet bilaterally." (*Id.*) Based on Plaintiff's medical history, a physical examination, and lab studies, Dr. Craane opined that Plaintiff's symptoms were secondary to a panic attack. (*Id.*) Dr. Craane ordered additional lab testing and an electrocardiogram. (*Id.*) The results of Plaintiff's testing and electrocardiogram were unremarkable. (Paulson Aff. ¶ 7.) There is no evidence in the record of other symptoms or complications.

Dr. Paulson also offers testimony that "any delay between the time [Plaintiff] reported medical complaints to [Defendant] and the time Dr. Craane evaluated [Plaintiff] did not adversely affect [Plaintiff's] prognosis." (Paulson Aff. ¶ 10.) Dr. Paulson further opined "the care [Plaintiff] received from the DOC was reasonable and that at no time was [Defendant] deliberately indifferent to a complaint by [Plaintiff]." (*Id.*)

The Minnesota Department of Corrections' ("DOC") grievance procedure, Policy 303.100, is included as an exhibit attached to the Affidavit of Shelli Monio. (Affidavit of Shelli Monio, Ex. 1 [hereinafter Policy 303.100].) Prior to filing an official grievance, the DOC offers inmates an informal process to resolve problems in which the inmate submits a complaint, or "kite" allowing jail staff to rectify problems. (Policy 303.100, subd. A.1.) In the event the kite

---

[2] Dr. Paulson's affidavit is based on his personal knowledge and his "review of records kept in the ordinary course of business by the DOC." (Paulson Aff. ¶ 2.)

does not resolve the problem, and the inmate is more than forty working days from release, the inmate may submit a formal grievance to the facility grievance coordinator. (*Id.*) The formal grievance must include a completed Offender Grievance form, stating the grievance and setting forth a preferred resolution, and all kites used in an attempt to resolve that grievance, and must be limited in length to the Offender Grievance form and one additional sheet of paper. (Policy 303.100, subd. A.1.a.)

Upon receipt of an inmate's formal grievance, the facility's grievance coordinator, resolves any threshold issues such as ambiguity as to the inmate's complaints, or a failure to attempt to informally resolve the dispute. (Policy 303.100, subd. A.2.a.) The grievance coordinator then logs the grievance, sends the inmate confirmation the grievance was logged, and determines the appropriate investigation process for the particular grievance. (Policy 303.100, subd. A.2.b-d.) The grievance coordinator submits the investigation results to the warden who dismisses or affirms the grievance. (Policy 303.100, subd. A.2.e.)

If the inmate is unsatisfied with the results of his grievance, he may submit a an appeal to the Central Office within 15 days of receiving the warden's decision. (Policy 303.100, subd. B.1.) The appeal process proceeds similarly to the original grievance procedure outlined above. (Policy 303.100, subd. B.)

On May 9, 2011, Shelli Monio, the facility's grievance coordinator, received Plaintiff's official grievance. (Monio Aff. ¶ 4.) Monio returned the grievance form to Plaintiff, indicating he failed to attach any kites or responses to kites received in the chain of command. (*Id.*) Plaintiff failed to resubmit his grievance. (*Id.*)

## II.     Standard of Review

A court should grant summary judgment where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court may not grant summary judgment if there is a genuine issue of material fact. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view all reasonable inferences in the light most favorable to the nonmoving party. *Enter. Bank*, 92 F.3d at 747.

While both the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law is on the moving party, *id.*, the nonmoving party "must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial," *3M Co. v. Intertape Polymer Grp., Inc.*, 423 F. Supp. 2d 958, 961 (D. Minn. 2006) (Tunheim, J.) (citing *Krenik v. Cnty. of Le Seur*, 47 F.3d 953, 957 (8th Cir. 1995)) (other citations omitted). A plaintiff opposing summary judgment must "substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Jung*, 422 F.3d at 638.

## III.     Discussion

### A.     Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA") sets forth certain requirements before a prisoner may bring a lawsuit under 42 U.S.C. § 1983 or any other federal law. One such requirement is that a prisoner must first exhaust all administrative remedies before bringing a civil action. 42 U.S.C. § 1997e(a). Exhaustion under the PLRA "applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies results in the dismissal of an unexhausted claim. 42 U.S.C. § 1997e(c)(1). Dismissal of claims with prejudice is appropriate if, for example, a plaintiff can no longer exhaust his claims because "he has procedurally defaulted on them and his suit is precluded forever . . . ." *Parks v. Dooley*, Civ. No. 09-3514 (PAM/JSM), 2011 WL 847011, at *17-18 (D. Minn. Feb. 11, 2011) (citing *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (requiring "proper exhaustion" under the PLRA)); *see also Giano v. Goord*, 380 F.3d 691, 676-77 (2d Cir. 2004) (agreeing with the Seventh and Tenth Circuits, which import a "procedural default" concept into the PLRA's exhaustion requirement).[3]

Plaintiff abandoned his grievance before fully exhausting the administrative remedies afforded him under the Minnesota Department of Corrections' grievance policy. The Court recommends granting Defendant's motion. Furthermore, because the time limit during which Plaintiff may pursue his administrative grievance has lapsed, the Court further recommends that the dismissal be with prejudice. Dismissal without prejudice would serve no purpose because the incident about which Plaintiff complains is time-barred by the DOC's grievance procedure.

Because Plaintiff failed to exhaust his administrative remedies, and because those administrative remedies are no longer available to him, the Court recommends Defendant's motion for summary judgment be granted and Plaintiff's complaint be dismissed with prejudice.

### B.     Official Capacity Claims

Alternatively, the Court recommends Defendant's motion be granted because the record is devoid of evidence sufficient to support Plaintiff's claims against Defendant in her official capacity. Where a complaint is silent as to whether a lawsuit is against an individual in his

---

[3] *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Ross v. Cnty. Of Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004)

personal or official capacity, the Eighth Circuit has instructed that the claim should be construed as an official-capacity claim. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619-20 (8th Cir. 1995) (citing *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)). The holding in *Egerdahl* "requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities." *Id.* at 620. That requirement affords a defendant "prompt notice of his or her potential personal liability." *Nix*, 879 F.2d at 431. Further, the Supreme Court has held "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit *against the entity*." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis added) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)). Where a plaintiff sues a public official in his official capacity, courts must treat the action as a lawsuit against the county. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).

To establish a county or municipality's liability under Section 1983, "a municipal 'policy' or 'custom' [must] cause[] the constitutional violation." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009); *Doe ex rel. Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998). Alternatively, a plaintiff may establish liability by showing a policy is facially lawful but has been adopted with "'deliberate indifference' to its known or obvious consequences." *Moyle*, 571 F.3d at 818 (citing *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 1992)). The court in *Moyle* acknowledged that the standard to elevate a facially lawful policy to "unlawful" requires a finding that the county maintained "'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Id.* at 818-19 (citing *City of*

*Canton v. Harris*, 489 U.S. 378, 390 (1989)). Negligence is insufficient to establish liability. *Id.* at 819 (citation omitted).

Again, there is no evidence in the record of a custom, policy, or pervasive practice of depriving inmates of medical care. Moreover, Plaintiff has not even alleged such a wide-ranging conspiracy. Rather, Plaintiff's claims have focused on specific deficiencies with regard to *his* care. Thus, absent evidence in the record of an unconstitutional custom or policy, or a constitutional policy that has been reliably implemented in a way that results in the deprivation of constitutional rights, there can be no municipal liability. Accordingly, the Court recommends summary judgment be granted.

### C. Eighth Amendment Claims

Even though the Court has recommended granting Defendant's motion based on exhaustion and because Plaintiff has not established municipal liability, Plaintiff's claim would fail on the merits, too. It is a violation of the Eighth Amendment to act with deliberate indifference to a prisoner's serious medical need. *Estelle v. Gamble*, 428 U.S. 97, 104 (1976). It is irrelevant whether such violation occurs through the actions of prison doctors or prison guards, or through the intentional denial of, intentional interference with, or delayed access to medical care. *Id.* at 104-05.

To establish a prison official's deliberate indifference to a serious medical need, a prisoner must demonstrate: "(1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk." *Robinson v. Hager*, 292 F.3d 560, 563-64 (8th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish such a violation, a plaintiff must demonstrate both an objective and subjective component. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citing *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir.

1993)); *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). An imperative prerequisite to success on this claim is that the prison officials "knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). The corollary to that requirement is the necessary implication that negligent failure to diagnose and negligent treatment are insufficient to support a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 105-06; *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993); *see also Domino v. Texas Dep't of Crim. Justice,* 239 F.3d 752, 755 (5th Cir. 2001) ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.").

There is no evidence in the record of an objectively serious medical need, and therefore, Plaintiff is not entitled to relief. *See, e.g.*, *Mahamed v. Anderson*, Civ. No. 07-4815 (ADM/FLN), 2009 WL 873534, at *5-6 (D. Minn. Mar. 30, 2009) (citations omitted) ("However, one incident of vomiting does not necessarily rise to the level of a serious medical need . . . . Because there was no objective manifestation that Mahamed was in obvious medical distress, and once he complained of pain he was provided treatment, Defendants were not deliberately indifferent for failing to provide medical treatment after the August 21 incident.").

Here, Plaintiff vomited in his cell and was seen by a doctor the following morning. Subsequent tests were unremarkable. Indeed, Dr. Craane diagnosed Plaintiff's symptoms as "secondary to a panic attack." There is no evidence that Plaintiff suffered from an objectively serious medical need. Likewise, Defendant, a prison guard, was advised that Plaintiff was vomiting, but she was not advised that Plaintiff was also suffering from chest pains. There is no evidence that Defendant would have viewed Plaintiff's vomiting as a serious medical need. Most

importantly, Defendant did not hinder Plaintiff's ability to consult with a prison clinical staff within the confines of the prison's policies.

Because Plaintiff has not offered evidence that he suffered from an objectively serious medical need, nor has he offered evidence that Defendant was objectively or subjectively indifferent, the Court recommends Defendant's motion be granted.

## IV.    Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Motion for Summary Judgment (ECF No. 37) be **GRANTED**; and

2.   **JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 15, 2013                          _s/ Jeanne J. Graham_____
                                                 JEANNE J. GRAHAM
                                                 United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **February 1, 2013**. A party may respond to the objections within fourteen (14) days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made.